UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| LANDAN YOHN, | : | CIVIL NO: 1:13-CV-00024 |
|---|---|---|
| Plaintiff | : | (Judge Conner) |
| v. | : | (Magistrate Judge Schwab) |
| NATIONWIDE INSURANCE COMPANY, | : | |
| Defendant | : | |

# REPORT AND RECOMMENDATION

## I. Introduction.

This is a case where an insured is suing his insurance company for breach of contract and bad faith in connection with an uninsured motorist claim. Because the allegations in the complaint regarding the bad faith claim are conclusory, we recommend that the insurance company's motion to dismiss the bad faith claim be granted and that the insured be given leave to file an amended complaint.

## II. Background and Procedural History.

The plaintiff, Landan Yohn, initiated this action by filing a complaint claiming that the defendant, Nationwide Insurance Company, breached an automobile insurance contract and acted in bad faith in connection with his claim for uninsured motorist coverage. As Yohn alleges that the parties are citizens of

different states and that the amount in controversy is in excess of $75,000, this court has jurisdiction pursuant to 28 U.S.C. §1332.

Yohn alleges that, on January 24, 2011, he was a passenger in a vehicle operated by George Yohn and insured by the defendant, and he was involved in a collision with another vehicle, the driver of which fled the scene without providing any information about his identity. Yohn contends that, as a result of the collision, he suffered serious and permanent injuries. More specifically, he asserts that he suffered permanent vision loss and loss of stereoscopic depth perception in his right eye. He also alleges that he incurred medical expenses and inconvenience, and he suffered and will suffer in the future great mental and physical pain, great inconvenience in carrying out daily activities, and a loss of life's pleasures and enjoyment. He further alleges that he was and will be subject to great humiliation, embarrassment, anxiety, and disfigurement, and he sustained in the past and will sustain in the future a loss of earnings, loss of earning power, and loss of earning capacity. He also alleges that he incurred and will incur in the future incidental costs as a result of chronic medical conditions.

According to Yohn, at the time of the accident he was insured by the defendant under a policy that reads in relevant part: "Limits of liability: (Stacked)

$100,000 each person, $300,000 each occurrence."[1] He alleges that he sought recovery for his pain and suffering under the uninsured-motorist-coverage provision, and the defendant made an offer of $100,000 in exchange for a full and final release of his claim, which offer, according to Yohn, was not reasonable in light his injuries. Yohn asserts that the defendant has made no other offers and that the defendant lacks a reasonable basis for refusing to pay the full amount of the uninsured motorist benefits owed to him. According to Yohn, the defendant has unreasonably, and in bad faith, deprived him of benefits owed to him under the policy, has refused and failed pay the full amounts of benefits owed to him under the policy, and has devised a scheme to deprive him of benefits and unreasonably delay paying benefits with the purpose of furthering its own financial gains and interests. Yohn alleges that the defendant acted willfully and recklessly and with

---

[1] The policy, which is attached to the complaint as an exhibit, provides, in relevant part, under the Uninsured Motorists section: "The insuring of more than one person or vehicle under this policy does not increase our Uninsured Motorists payment limits. In no event will any insured be entitled to more than the highest per-person limit applicable to any one motor vehicle under this policy or any other policy issued by us. However, if your Declarations show you have elected "Uninsured Motorists—Bodily Injury Stacked" coverage, the sum of limits for your autos apply to you or a relative as stated in the Declarations." *Doc. 1-1* at 28. The Declarations to the policy list four vehicles, with limits of liability for each as to Uninsured Motorists—Bodily Injury: "(Stacked) $100,000 Each Person, $300,000 Each Occurrence." *Id.* at 3-4. Thus, although not explicit, we construe Yohn to be alleging that the limits under the policy for uninsured motorist coverage is $400,000 per person.

3

deliberate indifference toward him and that the defendant has and continues to act in bad faith.

Count I of the complaint is a claim for breach of the insurance contract. In that count, Yohn alleges that the defendant improperly, unjustifiably, and unconscionably attempted to deny benefits due and/or failed to pay benefits due under the policy pursuant to a bias. According to Yohn, the value of his claim exceeds the limits under the policy, but the defendant misrepresented and deliberately undervalued his claim, wrongfully withheld benefits owed to him, and knowingly elevated its financial interests above his interests. Yohn alleges that, as a result of the breach, the defendant has been unjustifiably enriched to his detriment, and he has suffered loss of use of the benefits payable to him.

Count II of the complaint is a claim for bad faith under 42 Pa.C.S.A. §8371. According to Yohn, the defendant acted in bad faith by:

    a. Failing to properly evaluate Plaintiff Yohn's ills and injuries with respect to the accident in question;
    b. Failing to properly consider evidence supplied by Plaintiff Yohn and his counsel in support of his claim;
    c. Intentionally misrepresenting coverage in the policy;
    d. Failing to timely respond to inquiries and correspondence;
    e. Making unreasonable offers of settlement of Plaintiff's claim;
    f. Adopting a company practice of intentionally undervaluing uninsured motorist claims and delaying paying said claims for an unreasonable period of time;
    g. Failing to properly value Plaintiff Yohn's ills and injuries with respect to the accident in question;

    h. Failing to make a timely payment to Plaintiff Yohn per the terms of the uninsured motorist coverage set forth in the relevant policy;
    i. Failing to adhere to and abide by the policy issued to George Yohn of which Plaintiff Yohn was entitled to receive coverage;
    j. Failing to use a proper standard when assessing Plaintiff Yohn's claim;
    k. Failing to employ only unreasonable [sic] demands for proof of loss;
    l. Using abusive and coercive tactics to settle Plaintiff Yohn's claim;
    m. Failing to thoroughly investigate the claim in accordance with Defendant's own procedures; and
    n. Causing an unreasonable delay in resolving the claim or failure to investigate.

*Doc. 1* at ¶43.

The defendant has filed motion to dismiss the bad faith claim pursuant to Fed.R.Civ.P. 12(b)(6) arguing that the complaint fails to state a bad faith claim because the allegations as to that claim are conclusory and boilerplate. The motion has been briefed and is addressed in this Report and Recommendation.

### III. **Motion to Dismiss and Pleading Standards.**

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted." When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading

5

of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010). In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012). With respect to the benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)]*, and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir.2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009). The statement required by

6

Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler, supra*, 578 F.3d at 211. "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir.1994). A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir.1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal, supra,* 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir.2010)(quoting *Iqbal, supra,* 556 U.S. at 675 & 679).

## IV. Discussion.

The defendant contends that the complaint fails to state a bad faith claim upon which relief can be granted because Yohn's allegations are conclusory and boilerplate.

Pennsylvania's Bad Faith Statute, 42 Pa.C.S.A. § 8371, establishes a private cause of action against an insurer that has acted in bad faith toward its insured, and provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
> (2) Award punitive damages against the insurer.
> (3) Assess court costs and attorney fees against the insurer.

"Bad faith" is "'any frivolous or unfounded refusal to pay proceeds of a policy.'" *Terletsky v. Prudential Property and Cas. Ins. Co.*, 649 A.2d 680, 688 (1994)(quoting *Black's Law Dictionary* 139 (6th ed. 1990)). "To recover for bad faith, 'a plaintiff must show by clear and convincing evidence that the insurer (1) did not have a reasonable basis for denying benefits under the policy and (2) knew or recklessly disregarded its lack of a reasonable basis in denying the claim.'" *Post*

*v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 522 (3d Cir. 2012)(quoting *Condio v. Erie Ins. Exch.,* 899 A.2d 1136, 1143 (Pa.Super.Ct. 2006)).

"Although the insurer's conduct need not be fraudulent, 'mere negligence or bad judgment is not bad faith.'" *Northwestern Mutual Life Ins. Co. v. Babayan,* 430 F.3d 121, 137 (3d Cir. 2005)(quoting *Brown v. Progressive Ins. Co.,* 860 A.2d 493, 501 (Pa.Super.Ct. 2004)). Rather, "knowledge or reckless disregard of a lack of a basis for denial of coverage is necessary." *Post, supra,* 691 F.3d at 523 (quoting *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 751 n.9 (3d Cir. 1999)). Moreover, "[w]hile an insurer has a duty to accord the interests of its insured the same consideration it gives its own interests, 'an insurer is not bound to submerge its own interest in order that the insured's interests may be made paramount, and an insurer does not act in bad faith by investigating and litigating legitimate issues of coverage.'" *Post, supra,* 691 F.3d at 523 (quoting *J.C. Penney Life Ins. Co. v. Pilosi,* 393 F.3d 356, 368 (3d Cir.2004)). "'Bad faith is not present merely because an insurer makes a low but reasonable estimate of an insured's damages.'" *Smith v. State Farm Mutual Auto. Ins. Co.*, No. 12-1681, 2012 WL 5910532 at *2 (3d Cir. Nov. 27, 2012)(quoting *Johnson v. Progressive Ins. Co.,* 987 A.2d 781, 784 (Pa.Super.Ct. 2009)).

The complaint consists mostly of conclusory statements that are not supported by factual allegations. For example, Yohn alleges that the defendant intentionally misrepresented coverage in the policy, but he does not allege what misrepresentation the defendant made. Similarly, Yohn alleges that the defendant used abusive and coercive tactics to settle the claim without explaining what those tactics were. Yohn alleges that the defendant failed to properly consider evidence that he and his counsel supplied and that the defendant failed to employ only reasonable demands for proof of loss, but he does not allege what evidence was supplied that was not considered or what demands for proof of loss the defendant made. Further, Yohn alleges that the defendant failed to thoroughly investigate his claim in accordance with its own procedures, but he does not allege what those procedures were or how the defendant deviated from them. Yohn also alleges that the defendant caused an unreasonable delay in resolving the claim without setting forth any dates for any of the actions taken regarding the claim. Similarly, Yohn alleges that the defendant failed to timely respond to inquiries and correspondence without setting forth anything about those inquiries and correspondence or the defendant's responses.

These allegations are the type of conclusory allegations that the courts have held are not entitled to be assumed to be true and which fail to state a claim upon

which relief can be granted. *See Smith, supra,* 2012 WL 59100532 at * 3 (affirming dismissal of bad faith claim and finding the following allegations to be conclusory: the defendant "breach[ed] covenants of good faith and fair dealing," "engag[ed] in unfair settlement negotiations," "intentionally misrepresent[ed] coverage in the policy," "misrepresent[ed] facts and its evaluation of Plaintiff's claim," "fail[ed] to properly investigate [her UIM claim]," and "fail[ed] to timely respond to inquiries and correspondence"); *Sypeck v. State Farm Mut. Auto Ins. Co.,* Civil Action No. 3:12-CV-324, 2012 WL 2239730 at *3 (M.D.Pa. June 15, 2012) (Caputo, J.)(dismissing bad faith claim that was supported by conclusory allegations and boilerplate language including, among others, allegations about the defendant "failing to objectively and fairly evaluate Plaintiff's claim," "failing to adopt and/or implement reasonable standards in evaluating Plaintiff's claim," and "[n]ot attempting in good faith to effectuate a fair, prompt and equitable settlement of Plaintiff's claim in which Defendant's liability under the policy had become reasonably clear"); *Muth v. State Farm Fire & Cas. Co.*, Civil No. 1:CV-10-1487, 2010 WL 3805386 (M.D.Pa. Sept. 22, 2010)(Caldwell, J.)(characterizing as conclusory allegations that the defendant "lacked a reasonable basis for denying" the claim, "intentionally or recklessly disregarded the reasonable basis for the claim," failed "to conduct a reasonable and fair investigation of the claim," failed "to attempt to come to a fair and reasonable settlement of the claim when liability

is clear," failed to "promptly provide a reasonable explanation for denial of the claim," and failed "to specifically detail evidence of [the] reason to deny [the] claim").

In support of its argument that Yohn's allegations are conclusory, the defendant cites *Sypeck, supra,* 2012 WL 2239730 at \*3. In that case, Ms. Sypeck alleged that as a result of an accident with an underinsured motorist she suffered severe and permanent injuries, including a concussion and several contusions, that required medical care and treatment resulting in medical expenses in excess of $24,000 and possible future medical expense, and wage losses in excess of $20,000 as well as emotional damages such as anxiety, embarrassment, and a reduced ability to enjoy life. *Id.* at \*1.[2] After Sypeck settled with the tortfeasor for

---

[2] More specifically, the amend complaint in the *Sypeck* case included the following allegations: that Sypeck suffered "severe and permanent injuries including, but not limited to, concussion, bilateral knee contusions, bilateral patellofemoral syndrome, left shoulder contusion, bilateral wrist contusions"; that she required and will require "medical care and treatment, physical therapy, diagnostic testing, use of pain medications, and the use of rehabilitative services"; that she has incurred and will incur medical expenses; that the suffered a loss of earnings and impairment of her future earning capacity; that she "suffered and will continue to suffer from pain, discomfort, inconvenience, anxiety, embarrassment, the inability to engage in her usual activities and the deprivation of the ordinary and usual enjoyment of life and life's pleasures"; that the records provided to the defendant establish that she "suffers from debilitating and painful injuries; that she will continue to suffer from them for the rest of her life; that these conditions will likely worsen; that she may require painful and expensive knee replacement surgeries; that she has sustained a wage loss in excess of $20,000.00; that her

13

$100,000, she presented a claim for underinsured motorist benefits to her insurance company and provided her insurance company with her complete medical file and record of her economic loss. *Id.* Her insurance company offered to settle the claim for $5,000, an amount which Ms. Sypeck characterized as unreasonable based on her damages. *Id.* After concluding that Sypeck supported her bad faith claim almost entirely with conclusory allegations and boilerplate language, Judge Caputo rejected Sypeck's argument that she stated a bad faith claim because in light of her extensive injuries, her insurance company's $5,000 offer was facially unreasonable. *Id.* at *3. Judge Caputo reasoned that "even if the offer was facially unreasonable, that does not prove that State Farm acted in bad faith—rather, it might have negligently failed to investigate and evaluate, leading to an unreasonable settlement offer." *Id.*

Yohn's remaining allegations regarding his bad faith claim are basically that the defendant failed to properly evaluate and value his claim. Yet, other that his conclusory allegation that the value of his claim exceeds the limits[3] under the policy, Yohn does not allege facts to support the value of his claim. For example,

---

medical bills alone were in excess of $24,000.00; and that her health insurance had a lien of almost $23,000.00 against any recovery." *Doc. 6 (amended complaint)* in *Sypeck v. State Farm Ins. Co.,* 3:12-CV-00324 (M.D.Pa.).

[3] Yohn does not explicitly allege what the policy limits are. *See* n.1.

14

although he claims loss of earnings, loss of earning power, and loss of earning capacity, he does not allege the amount of earnings he has lost or will likely lose in the future, and he has not alleged any relevant facts concerning his earning capacity, such as his age, education, employment status, or how his injury has affected his ability to work. Similarly, although Yohn alleges that he has incurred medical expenses, he does not allege anything about the amount of those expenses or what medical treatment he received or will likely need in the future. Moreover, in addition to not alleging facts to support the value of his claim, Yohn has not alleged anything about what information he provided to the defendant about the value of his claim. Although there clearly was a disagreement between Yohn and the defendant over the value of Yohn's claim, such disagreements are not unusual, and "the failure to immediately accede to a demand for the policy limit cannot, without more, amount to bad faith." *Smith, supra,* 2012 WL 59100532 at * 3. Yohn has not alleged facts to support his allegations. Rather, he has merely made conclusory allegations that characterize the defendant's conduct.

In arguing that the complaint states a bad faith claim upon which relief can be granted, Yohn cites the decision in *Amitia v. Nationwide Mutual Ins. Co.,* Civil No. 3:08-CV-00335, 2009 WL 111578 (M.D. Pa. Jan. 15, 2009), a case in which Judge Munley ruled that allegations such as the defendant failed "to conduct a

15

timely and thorough investigation," failed "to timely pay the claim," and failed to evaluate the claim "promptly, objectively and fairly" stated a bad faith claim upon which relief can be granted. *Amitia,* however, was decided before the Supreme Court's decision in *Iqbal,* which clarified that the pleading standards set forth in *Twombly* apply to all civil actions and which expounded on the meaning on those standards. Accordingly, we do not find the decision in *Amitia* to be persuasive. Rather, although we recognize that they are not binding, we find the more recent decisions in *Smith, Sypeck,* and *Muth* to be persuasive, and because the allegations in the complaint in this case are similar to the allegations that the courts in those cases concluded failed to state a bad faith claim upon which relief can be granted, we conclude that the complaint in this case fails to state a bad faith claim upon which relief can be granted. So we will recommend that the defendant's motion to dismiss the bad faith claim be granted.

" [I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008). The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.* We cannot say that amendment would be inequitable or futile in this case. Thus, we will recommend that Yohn be given an opportunity to

16

file an amended complaint to attempt to state a bad faith claim upon which relief can be granted.

## V. <u>Recommendations</u>.

Accordingly, for the foregoing reasons, **IT IS RECOMMENDED** that the defendant's motion (doc. 11) to dismiss the bad faith claim be granted and that Yohn be granted leave to file an amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of May, 2013.

*S/Susan E. Schwab*
Susan E. Schwab
United States Magistrate Judge